# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

Timothy Beers

    v.                                    Civil No. 15-cv-454-SM
                                            Opinion No. 2018 DNH 144

Jon Fouts et al.

## **O R D E R**

Before the court are two post-judgment motions filed by plaintiff, Timothy Beers (Doc. Nos. 104, 105). Construed liberally, both motions seek relief from the final judgment, Doc. No. 103, pursuant to Fed. R. Civ. P. 59(e). Defendants object. See Doc. No. 111.

## **Procedural History**

The claims in this action arose out of a December 18, 2014 group strip search of New Hampshire State Prison ("NHSP") inmates, including Beers, conducted in the NHSP gymnasium after a contact-visit holiday event attended by inmates and their families. After the families left the event, NHSP corrections officers strip-searched the inmates in the presence of other inmates, a video surveillance camera, and other corrections officers, including a female officer.

Beers filed this case to challenge the validity of the group strip search. Beers's claims asserted under the Prison

Rape Elimination Act ("PREA") claims, the Fourteenth Amendment's Equal Protection Clause, and claims alleging Eighth Amendment violations for humiliation and endangerment were dismissed for failure to state a claim upon which relief could be granted. See Feb. 2, 2016 Order (Doc. No. 13) (approving Dec. 14, 2015 Report and Recommendation ("R&R") (Doc. No. 7)). The court allowed Beers to proceed on a claim asserting that the group strip search was unreasonable, in violation of the Fourth Amendment. See id. The defendants to that claim were the NHSP officers who Beers claimed had ordered or authorized the group strip search at issue. See id.

Defendants filed motions asserting that they were entitled to qualified immunity as to the Fourth Amendment claim. See Defs. Fouts's, Greenwood's, Jardine's, and Orlando's Mot. for Summ. J. (Doc. No. 44); Def. Forcier's Mot. to Dismiss (Doc. No. 86). The court granted those motions, finding that the defendants were entitled to qualified immunity as to the Fourth Amendment claim, and the clerk entered judgment for defendants in this case. See Sept. 12, 2017 Order (Doc. No. 92), 2017 WL 4041316, 2017 U.S. Dist. LEXIS 147077 (D.N.H. Sept. 12, 2017) (granting motion for summary judgment); Mar. 7, 2018 Order (Doc. No. 102) (granting motion to dismiss); Mar. 12, 2018 Judgment (Doc. No. 103). Beers then filed two motions seeking to reopen

2

the judgment, to allow for more discovery, and to schedule a jury trial.  See Doc. Nos. 104, 105.

**Rule 59(e) Standard**

Beers's motions seek relief under Rule 59(e) of the Federal Rules of Civil Procedure, as they were filed less than twenty-eight days after judgment was entered in this case.  See Alicea v. Machete Music, 744 F.3d 773, 781 (1st Cir. 2014); Aybar v. Crispin-Reyes, 118 F.3d 10, 17 n.3 (1st Cir. 1997).  Although courts have "considerable discretion" in deciding whether to grant or deny a motion to alter or amend a judgment under Rule 59(e), Venegas-Hernandez v. Sonolux Records, 370 F.3d 183, 190 (1st Cir. 2005), such relief is "'an extraordinary remedy which should be used sparingly.'"  Palmer v. Champion Mortg., 465 F.3d 24, 30 (1st Cir. 2006) (citation omitted).  This court may grant a Rule 59(e) motion based on an intervening change in the law, a manifest error of law or fact underlying the judgment, or newly-discovered evidence that could not have been produced before judgment entered.  Deka Int'l S.A. v. Genzyme Corp. (In re Genzyme Corp. Sec. Litig.), 754 F.3d 31, 46 (1st Cir. 2014); Markel Am. Ins. Co. v. Díaz-Santiago, 674 F.3d 21, 32 (1st Cir. 2012); Glob. NAPs, Inc. v. Verizon New England, Inc., 489 F.3d 13, 25 (1st Cir. 2007).  When a motion for relief from a judgment is coupled with a motion to amend the complaint, the

motions may be properly denied if the proposed amendment is futile.  Feliciano-Hernández v. Pereira-Castillo, 663 F.3d 527, 538 (1st Cir. 2011).


**Motion to Re-open and Expand the Record (Doc. No. 105)**

In Document No. 105, Beers asks the court to add a document to the record, Doc. No. 105-1, entitled, "PREA Audit Report," concerning PREA reports at the Northern New Hampshire Correctional Facility ("NCF"), as well as unspecified New Hampshire Department of Corrections ("DOC") training records, which Beers asserts would show that all DOC employees have received training concerning sexual abuse, "voyeurism," and/or sexual harassment.  Beers states the document he seeks to add to the record contains information contrary to what defendants represented and disclosed in discovery in this case.

Even if the PREA Audit Report and training records were deemed to be new evidence that Beers could not have produced before entry of judgment, the existence of those records would not change the result in this case.  In granting defendant Forcier's motion to dismiss and the remaining defendants' motion for summary judgment on grounds of qualified immunity, this court determined that the law was not clearly established in December 2014 in the First Circuit that the group strip search at issue would violate the Fourth Amendment.  The existence of

records showing that corrections officers had been trained in the recognition and prevention of sexual assault, voyeurism, and sexual abuse would not have altered that legal conclusion. Accordingly, the relief sought in Document No. 105 is denied.

**Motion to Litigate First Amendment Claim (Doc. No. 104)**

I.  Background

The March 7, 2018 Order (Doc. No. 102) granting defendant Forcier's motion to dismiss stated, in pertinent part, that all claims in the case had been resolved, and for that reason, the court directed the clerk to enter judgment. In Document No. 104, Beers argues that this court erred in not addressing his First Amendment religious freedom claim. Neither Beers's original complaint (Doc. No. 1), nor Beers's sole motion to amend the complaint (Doc. No. 49), referred to plaintiff's religious beliefs or alleged facts stating a First Amendment claim.

The court has reviewed its docket to ascertain whether Beers pleaded a First Amendment free exercise claim or any related, potentially viable claim in this case, and, if so, what facts he alleged as to those claims. The court's review of the record shows that the religious freedom claim Beers now claims to have asserted in this action began to take shape in December 2016, when Beers filed an affidavit written by inmate Javier

Santana (Doc. No. 33-1) as an attachment to a discovery motion. In that affidavit, Santana stated that Santana told a supervising officer that stripping out in front of other inmates would violate Santana's religious rights. Santana avers that the officer, whom Beers later identified as defendant Forcier, allowed Santana's strip search to occur in a locker room, away from the other inmates, after saying "[w]e would not want to violate any rights." Doc. No. 33-1, at 2.

In Beers's objection to defendants' motion for summary judgment (Doc. No. 65), filed in March 2017, Beers asserted facts for the first time in the case regarding his own religious beliefs, which he alleged prohibited him from appearing naked in front of others unknown to him, for their entertainment, at the time of the group strip search. See Doc. No. 65 at ¶¶ 41, 95, at 16, 30. Beers alleged similar facts in Document No. 88, in objecting to and seeking reconsideration of the June 12, 2017 R&R. In addition, in Document Nos. 87 and 88, Beers asserted that Forcier's order that Santana be strip-searched in a locker room gave rise to a Fourteenth Amendment equal protection claim based on the defendants' allegedly preferential treatment of Santana.[1] See Doc. No. 87, at 2; Doc. No. 88, at 15. The court

---

[1]Beers had asserted an equal protection claim in the original complaint, which the court dismissed for failure to state a claim. See Feb. 2, 2016 Order (Doc. No. 13). Beers's later filings (Doc. Nos. 33-1, 87, 88) added the new allegations

6

concludes that, when it ruled on the dispositive motions in this case, it failed to recognize that Beers was attempting to assert a First Amendment claim in Document Nos. 33-1, 65, 87, and 88.

In ruling on Document No. 104, this court now considers whether this case may be reopened to allow Beers to litigate a First Amendment free exercise claim or a Fourteenth Amendment equal protection claim against defendants, based on the facts asserted in the Santana affidavit (Doc. No. 33-1), Beers's pleadings (Doc. No. 1, 78), exhibits (Doc. Nos. 45-1, 45-2), and Document Nos. 65, 87, and 88.

II. Discussion

    A. First Amendment Free Exercise Claim

        1. Standard

The government may not "prohibit" the free exercise of religion. U.S. Const. amend. I. The First Amendment Free Exercise Clause "requires government respect for, and noninterference with, the religious beliefs and practices of our Nation's people." Cutter v. Wilkinson, 544 U.S. 709, 719 (2005). While "[i]nmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion," the Supreme Court has

---

relating to Sgt. Forcier's handling of Santana.

noted that "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," and such "limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives -- including deterrence of crime, rehabilitation of prisoners, and institutional security." O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987) (citations and internal quotation marks omitted).

A restriction placed on an inmate's ability to practice his religion implicates the First Amendment. See LeBaron v. Spencer, 527 F. App'x 25, 31 (1st Cir. 2013). Such an impingement violates the Constitution, unless it was imposed pursuant to a prison policy that was "reasonably related to legitimate penological interests, and [was] not an exaggerated response to such objectives." Beard v. Banks, 548 U.S. 521, 528 (2006) (internal quotation marks and citations omitted); see also Turner v. Safley, 482 U.S. 78, 89-91 (1987).

> Four factors are relevant in making this determination: "(1) whether there is a valid, rational connection between the regulation and the legitimate government interest put forward to justify it; (2) whether alternative means to exercise the right exist; (3) the impact that accommodating the right will have on prison resources; and (4) the absence of alternatives to the prison regulation."

Lebaron v. Spencer, 527 F. App'x 25, 31-32 (1st Cir. 2013) (quoting Kuperman v. Wrenn, 645 F.3d 69, 74 (1st Cir. 2011)).

In examining a restriction under the Turner factors, substantial deference must be given to prison administrators' judgment. See Overton v. Bazzetta, 539 U.S. 126, 132 (2003). The burden "is not on the State to prove the validity of prison regulations but on the prisoner to disprove it." Id.

Here, plaintiff asserts that the group strip search contravened his religious beliefs because it exposed his body to individuals unknown to him, who lacked a proper reason to view his body.[2] The sworn statement of defendant NHSP Maj. Jon Fouts, however, explains the safety and security objectives served by the group strip search. Def. Jon Fouts's Answer to Pl.'s Interrog. No. 11, Doc. No. 44-4, at 10. Cf. Bell v. Wolfish, 441 U.S. 520, 558-59 (1979) (visual strip searches after contact visits with person from outside facility is reasonable in light of "serious security dangers" in detention facility, together with common occurrence of smuggling of contraband). Fouts avers that the group format of the search reduced the risk that contraband would enter the prison. The procedures employed following the event minimized the amount of time between the departure of guests and the search of inmates, which gave the inmates less time to hide or disseminate contraband. Id.

---

[2]Beers asserts that his religion prohibited displaying his body to others unknown to him for their entertainment. The assertion that the procedure at issue was entertaining to any officer or other defendant is purely speculative.

9

Fouts's statement regarding the legitimate purposes served by the search at issue is undisputed. This court defers to the professional expertise and judgment of corrections officials, such as Fouts, as to issues of institutional safety, security, and order. See O'Lone, 482 U.S. at 349; Pell v. Procunier, 417 U.S. 817, 827 (1974).

Beers has not pleaded facts regarding the nature of his religion and religious practices, other than his assertion that his religion forbids him from exposing his body to others unknown to him for their entertainment. Nothing before the court suggests that Beers lacked alternative means of exercising his religious rights. While Beers points to several alternative, more private search procedures that could have been used in lieu of the group strip search, Fouts's statement provides grounds for concluding that employing a different method of searching inmates at the event would have imposed additional burdens on prison safety and security resources. The record before the court does not show that the alternatives proposed by Beers were feasible at the time of the group strip search, or that the same procedures used at other facilities or at subsequent NHSP events could have been deployed in December 2014. In any event, Beers has not shown that the search was an exaggerated response to a legitimate safety and security concern. Therefore, assuming, without deciding, that the search

burdened Beers's religious practices, Beers would not be entitled to relief if a First Amendment free exercise claim were added to this case, as the group search at issue appears to have been reasonably related to a legitimate penological objective, and was not an exaggerated response to that concern. Cf. Israel v. City of N.Y., No. 11 CIV. 7726 JMF, 2012 WL 4762082, at *3, 2012 U.S. Dist. LEXIS 144712, at *8-*9 (S.D.N.Y. Oct. 5, 2012) (dismissing Fourth Amendment claim upon concluding that strip searching prisoners entering and leaving facility serves legitimate interest of preventing smuggling of contraband, and "[t]he presence of other inmates and officers, males and females, does not alter this determination").

2. Qualified Immunity

Further, this court previously concluded that defendants are shielded by qualified immunity from plaintiff's Fourth Amendment challenge to the group strip search. See Mar. 7, 2018 Order (Doc. No. 102); Sept. 12, 2017 Order (Doc. No. 92) (approving June 12, 2017 R&R (Doc. No. 82)). The court applies the law on qualified immunity set forth in the pertinent recommendations and rulings relating to the Fourth Amendment claims (Doc. Nos. 82, 102) to Beers's asserted First Amendment claim. The relevant inquiry for purposes of evaluating a qualified immunity defense in this context would be whether it

11

would have been clear to a reasonable NHSP officer in December 2014 that a group strip search under the circumstances would violate the First Amendment free exercise right of an inmate whose religion prohibited him from exposing his naked body to other inmates and officers.

Neither the Supreme Court nor the First Circuit has addressed that Free Exercise Clause claim.  Appellate court decisions from other jurisdictions considering similar claims in analogous circumstances indicate that the right under the Free Exercise Clause was not clearly established at the relevant time.  See, e.g., Harvey v. Segura, 646 F. App'x 650, 651 (10th Cir. 2016) (Gorsuch, J.) (qualified immunity applied to First Amendment free exercise claim of inmate who in January 2013 had been strip searched by guard of opposite sex); Canedy v. Boardman, 91 F.3d 30, 34 (7th Cir. 1996) (qualified immunity applied to cross-gender strip search free exercise claim, because "it was not at all clear" in 1992 that plaintiff's "interest in observing Islam's nudity taboos" decisively outweighed prison's "very strong interest in having its guards observe prisoners at all times and in all situations, and . . . [its] interest in providing equal employment opportunity to women").

While there are some district court decisions declining to dismiss First Amendment free exercise claims challenging strip

searches, including Valerio v. Wrenn, No. 15-cv-248-LM, 2017 WL 5956668, at *8, 2017 U.S. Dist. LEXIS 196999, at *20 (D.N.H. Oct. 23, 2017) (deferring consideration of qualified immunity defense until later stage of case), R&R approved, 2017 WL 5905514, 2017 U.S. Dist. LEXIS 196632 (D.N.H. Nov. 29, 2017), there are a number of lower court decisions from other jurisdictions dismissing such claims pretrial, see, e.g., Bradford v. Kramer, No. 15-cv-1405-JPG-SCW, 2017 U.S. Dist. LEXIS 45706, at *14-*22 (S.D. Ill. Jan. 27, 2017) (use of security cameras to continuously monitor cell of inmate whose religion prevented him from being seen naked by anyone other than his spouse, was not an exaggerated response to defendants' legitimate safety and security interests), R&R approved, 2017 U.S. Dist. LEXIS 45700 (S.D. Ill. Mar. 28, 2017); George v. City of N.Y., No. 12 CIV. 6365 PKC JLC, 2013 WL 5943206, at *9 n.3, 2013 U.S. Dist. LEXIS 159434, at *24-*25 n.3 (S.D.N.Y. Nov. 6, 2013) (S.D.N.Y. Nov. 6, 2013) (dictum) (lack of controlling precedent would likely entitle defendants to prevail on qualified immunity defense to First Amendment free exercise claim challenging group strip search).

This court cannot find "controlling authority or a robust consensus of cases of persuasive authority," Plumhoff v. Rickard, 134 S. Ct. 2012, 2023 (2014) (citation and internal quotation marks omitted), establishing that, under the

circumstances described by Beers, an inmate had a First Amendment free exercise right to avoid being subjected to a group strip search. As it would not have been clear to a reasonable officer that the group strip search violated the Free Exercise Clause, qualified immunity shields each defendant from liability for damages on that claim. Accordingly, the Rule 59(e) motion (Doc. No. 104) seeking leave to allow Beers to litigate his Free Exercise claim against defendants is denied as futile.

## B. Equal Protection

In addition to his First Amendment claim, Beers has alleged in his objections to defendants' dispositive motions that the strip search violated his Fourteenth Amendment right to equal protection. Specifically Beers alleged that Sgt. Forcier treated Santana preferentially by allowing him to be strip-searched in a locker room, while officers caused Beers to undergo the strip search along with the others in the gym. "The Fourteenth Amendment's Equal Protection Clause prohibits a state from treating similarly situated persons differently because of their classification in a particular group." Mulero-Carrillo v. Román-Hernández, 790 F.3d 99, 105-06 (1st Cir. 2015).

To establish an equal protection claim, a plaintiff needs to allege facts showing that "'(1) the [plaintiff], compared

with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure'" the plaintiff. Davis v. Coakley, 802 F.3d 128, 132-33 (1st Cir. 2015) (citations omitted). To meet the "'threshold requirement'" of differential treatment, a plaintiff must "'identify and relate <u>specific instances</u> where persons <u>situated similarly in all relevant aspects</u> were treated differently,'" to show that he was "'singled out for unlawful oppression.'" Ayala-Sepúlveda v. Munic. of San Germán, 671 F.3d 24, 32 (1st Cir. 2012) (emphasis in original) (citation omitted).

A showing that someone similarly situated was treated differently is missing here. While Santana and Beers were both ordered to strip after the holiday event, Santana, unlike Beers, specifically complained that the group strip search violated his religious beliefs. Beers has neither pleaded nor shown that he told any guard that the strip search violated his religious beliefs, or that any officer was aware of that religious conviction. Beers's silence during the event distinguishes his circumstance from Santana's, and precludes this court from finding that Beers's equal protection claim is viable.

## **Conclusion**

For the foregoing reasons, plaintiff's postjudgment motions (Doc. Nos. 104, 105) are DENIED.

SO ORDERED.

/s/ Steven J. McAuliffe
Steven J. McAuliffe
United States District Judge

July 10, 2018

cc: Timothy Beers, pro se
 Francis Charles Fredericks, Esq.
 Lynmarie C. Cusack, Esq.
 Seth Michael Zoracki, Esq.

16